**Mary Diane CLEMENTS, Appellant,**

v.

**Jan HARRIS, Executrix of the Estate of Thomas Leroy Clements, Appellee.**

**No. 2000–SC–0304–DG.**

Supreme Court of Kentucky.

Nov. 21, 2002.

Michael T. Connelly, Connelly, Kaercher & Stamper, Louisville, Counsel for Appellant.

John W. Stevenson, Owensboro, Counsel for Appellee.

Opinion of the Court by Justice STUMBO.

The instant action concerns the validity of a decree of the Daviess Circuit Court, which dissolved the marriage of Thomas Leroy Clements (Leroy) and the Appellant, Mary Diane Clements (Mary). Leroy has since passed away and the interests of his estate are being represented by Jan Harris, the Executrix and Appellee herein. The Court of Appeals below affirmed the dissolution decree, but reversed the circuit court's decision concerning the property disposition. Mary now requests we reverse only that part of the Court of Appeals' decision that upheld the dissolution decree. For the reasons set forth in the remainder of this opinion, we affirm.

Mary and Leroy became acquainted at church functions in Owensboro. The two became romantically involved and decided to move from Owensboro to Florida during

June of 1996. While in Florida, Mary and Leroy married on July 19, 1996. Using Leroy's pre-marital assets, the couple purchased residential property in Florida.

After only being wed for a few months, the couple's marital bliss dissolved. Leroy allegedly committed acts of domestic violence against Mary and he was subsequently arrested on October 2, 1996. Leroy posted bond, left Florida, returned to Owensboro, and moved in with his daughter. Soon thereafter, on October 11, 1996, Leroy filed a petition to dissolve the marriage.

On October 17, 1996, Mary was purportedly served a summons in Florida. However, the process server did not leave the summons with Mary, but instead left it with another individual at Mary's residence. Mary contends that this service of process was ineffective. Less than a month later, on November 11, 1996, the circuit court authorized the Master Commissioner, on Mary's behalf, to execute a deed to Leroy's pre-marital residence in Owensboro. The proceeds from the sale were to be placed in an escrow account. Then, on December 9, 1996, Mary filed a special appearance motion to dismiss for lack of jurisdiction, and the Master Commissioner entered a pendente lite order awarding the proceeds from the sale of the Owensboro property to Leroy.

On December 17, 1997, Mary was personally and effectively served a summons in Florida. Mary objected and renewed her motion to dismiss for lack of jurisdiction. On April 14, 1998, Leroy filed a motion for entry of decree in the Daviess Circuit Court, and Mary once again objected and moved to dismiss. On May 12, 1998, the circuit court entered a decree, which dissolved Leroy and Mary's marriage and allocated property. Mary then appealed the circuit court's decision to the Court of Appeals. In a unanimous opinion, the Court of Appeals panel reversed the circuit court's decision as to the property disposition, but affirmed the entry of the dissolution of marriage decree. While the Court of Appeals determined the circuit court lacked the proper jurisdiction due to Leroy's failure to meet the 180-day next residency requirement, it held that under KRS 22A.020(3), the dissolution decree could not be disturbed and must be affirmed. Mary then sought discretionary review from this Court. We granted review and now affirm.

■ The only issue before this Court is whether the decree which dissolved the marriage of Mary and Leroy was valid. Generally, a decree of dissolution of marriage is not subject to review before an appellate court of the Commonwealth. Section 115 of the Kentucky Constitution provides that "the General Assembly may prescribe that there shall be no appeal from that portion of a judgment dissolving a marriage." In 1976, the General Assembly enacted KRS 22A.020(3), which provides that "there shall be no review by appeal or by writ of certiorari from that portion of a final judgment, order or decree of a Circuit Court dissolving a marriage." In addition, for well over a century, appellate courts of the Commonwealth have consistently held that a judgment granting a dissolution of marriage is not appealable or subject to appellate jurisdiction. *Whitney v. Whitney,* 70 Ky. (7 Bush) 520 (1870); *Irwin v. Irwin,* 105 Ky. 632, 49 S.W. 432 (1899); *DeSimone v. DeSimone,* Ky., 388 S.W.2d 591 (1965); *Drake v. Drake,* Ky.App., 809 S.W.2d 710 (1991).

However, Mary contends that, under the circumstances of the instant matter, appeal and reversal of the dissolution decree should be permitted despite the existence of KRS 22A.020(3). For instance, Mary argues that the Court of Appeals should have reversed the dissolution decree be-

cause it determined that the trial court lacked jurisdiction. Mary directs this Court to *Self v. Self,* 293 Ky. 255, 168 S.W.2d 743 (1943), which held that a judgment granting a divorce may be appealed when that judgment is void. However, it has also been held that even when jurisdictional matters are concerned, a judgment granting a divorce will be upheld even if it is erroneous. *Lewis v. Lewis,* 224 Ky. 18, 4 S.W.2d 1106 (1928); *Weintraub v. Murphy,* Ky., 240 S.W.2d 594 (1951). Here, the Court of Appeals below held that the circuit court should have found that Leroy was not a resident of the Commonwealth of Kentucky. However, the Court of Appeals held that it could not review the dissolution decree. The Court of Appeals referenced *Elswick v. Elswick,* Ky., 322 S.W.2d 129 (1959), wherein it states:

> Where the question of jurisdiction in a divorce action has been raised in the lower court, and there is any evidence to show the jurisdictional residence of the parties, the lower court's judgment granting a divorce based upon a determination that it has jurisdiction is not void and cannot be questioned on appeal regardless of the fact that the determination may be against the overwhelming weight of the evidence and be clearly erroneous.

*Id.* at 131.

■ Thus, though the trial court acted erroneously in finding Leroy to be a resident of Kentucky, the decree of dissolution is not void. *Elswick, supra.* Mary has failed to present any contrary decisions or argument to persuade this Court to declare invalid the decree dissolving her mar-

riage with Leroy. Accordingly, we find no error in the Court of Appeals' decision to uphold the divorce judgment.

We have reviewed the other issues raised and find them to be without merit. Therefore, we need not address them.

The decision of the Court of Appeals affirming the Daviess Circuit Court's decree of dissolution of marriage is affirmed.

LAMBERT, C.J.; COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

KELLER, J., dissents by separate opinion, with JOHNSTONE, J., joining that dissent.

KELLER, Justice, dissenting.

I respectfully dissent from the majority opinion because the record in this case permits only two possible conclusions: (1) there is absolutely no evidence showing that Thomas Leroy Clements actually resided in Kentucky for the 180 days next preceding his filing of this divorce petition, in which case an appellate court may vacate the divorce decree even under the holding of *Elswick v. Elswick,*[1] or (2) Thomas Leroy Clements testified untruthfully as to his Kentucky residency, in which case appellate review is proper because the decree of dissolution in this case was void as fraudulently obtained. Accordingly, I would reverse the Court of Appeals and vacate the Daviess Circuit Court decree dissolving the marriage between Appellant and Thomas Leroy Clements.

As "[t]he word 'jurisdiction' is more easily used than understood,"[2] I wish to begin

---

1. Ky., 322 S.W.2d 129, 131 (1959) ("Where the question of jurisdiction in a divorce action has been raised in the lower court, *and there is any evidence to show the jurisdictional residence of the parties,* the lower court's judgment granting a divorce based upon a deter-

mination that it has jurisdiction is not void and cannot be questioned on appeal ...." (emphasis added)).

2. *Commonwealth, Department of Highways v. Berryman,* Ky., 363 S.W.2d 525, 526 (1962).

with some operational definitions. In simple terms, jurisdiction is "[a] court's power to decide a case or issue a decree,"[3] but a court's jurisdiction has three separate elements: "(1) jurisdiction over the person, (2) jurisdiction over the subject matter, and (3) jurisdiction to render the particular judgment sought, or as is sometimes said, jurisdiction of the particular case."[4]

"Personal jurisdiction" is "[a] court's power to bring a person into its adjudicative process; jurisdiction over a defendant's personal rights, rather than merely over property interests."[5] "Subject-matter jurisdiction" is "[j]urisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things."[6] It "refers to a court's authority to determine 'this kind of case' as opposed to 'this case.'"[7] Particular-case jurisdiction, although related to subject-matter jurisdiction, "means the right, authority, and power to hear and determine *a specific case* within that class of cases over which a court has subject matter jurisdiction."[8] In other words, particular-case jurisdiction refers to a court's authority to determine "this case" as opposed to "this kind of case." And, although a court that lacks subject-matter jurisdiction over an action will also always lack particular-case jurisdiction, a court can have proper subject-matter jurisdiction over an action, but nonetheless lack particular-case jurisdiction—e.g., when a particular jurisdictional fact[9] is not present.

While circuit courts have general subject-matter jurisdiction over dissolution of marriage actions,[10] a circuit court's jurisdiction to hear a particular dissolution of marriage action—i.e., its particular-case jurisdiction—is dependent upon the court finding a jurisdictional fact: "that one (1) of the parties, at the time the action was commenced, resided in this state ... and that the residence ... has been maintained for 180 next preceding the filing of the petition[.]"[11] In the present case, as the record conclusively demonstrates, and

**3.** BLACK'S LAW DICTIONARY 857 (7th ed.1999).

**4.** 20 AM. JUR. 2D *Courts* § 54 (1995).

**5.** BLACK'S LAW DICTIONARY 857 (7th ed.1999).

**6.** *Id.*

**7.** *Privett v. Clendenin*, Ky., 52 S.W.3d 530, 532 (2001).

**8.** 20 AM. JUR. 2D *Courts* § 55 (1995) (emphasis added).

**9.** A "jurisdictional fact" is "[a] fact that must exist for a court to properly exercise its jurisdiction over a case, party, or thing." BLACK'S LAW DICTIONARY 611 (7th ed.1999); *Collins v. Duff*, Ky., 283 S.W.2d 179, 182 (1955) ("[W]here the jurisdiction of the court depends upon a fact which the court is required to ascertain, the court has jurisdiction to determine that jurisdictional fact, and its judgment determining that fact is conclu-

sive on the question of jurisdiction until set aside or reversed by direct proceedings, and cannot be attacked collaterally."); *Duncan v. O'Nan*, Ky., 451 S.W.2d 626, 631 (1970) ("A jurisdictional element of this particular case was a judgment complying with formal requisites properly entered in the county court.").

**10.** KY. CONST. § 109 ("The judicial power of the Commonwealth shall be vested in ... a trial court of general jurisdiction known as the Circuit Court ...."); KY. CONST. § 112(5) ("The Circuit Court shall have original jurisdiction of all justiciable causes not vested in some other court."); KRS 24A.010(1) ("The Circuit Court is a court of general jurisdiction; it has original jurisdiction of all justiciable causes not exclusively vested in some other court."); KRS 403.010 ("[C]ourts having general jurisdiction may grant a divorce for the cause set out in this chapter.").

**11.** KRS 403.140(1)(a).

as the Court of Appeals correctly determined, the trial court lacked particular-case jurisdiction because Thomas Leroy Clements had not been an actual resident of Kentucky for the required 180 days.[12]

The majority concludes that it cannot set aside the decree of dissolution because KRS 22A.020(3) insulates such decrees from appellate review even when the trial court's finding of jurisdiction is erroneous. However, in this case, while the trial court's residency finding *was* erroneous, it was more than that—it was either wholly unsupported by the record or based upon fraudulent testimony. The majority opinion's recitation of the factual background to this appeal demonstrates the complete lack of support for the trial court's finding. Simply stated, the undisputed *fact* that Thomas Leroy Clements "decided to move from Owensboro to Florida during June of 1996 .... [and] purchased residential property in Florida"[13] is mutually exclusive with the trial court's conclusion that Thomas Leroy Clements actually resided in Kentucky between early-to-mid-April, 1996 and October 11, 1996 (when the petition for dissolution was filed). In fact, the Petition for Dissolution itself explicitly states that "[b]oth parties lived in the state of Florida since approximately July 19,

1996, and established residency in that state."

The trial court's Decree of Dissolution of Marriage states that its finding that Thomas Leroy Clements satisfied Kentucky's 180–day residency requirement was premised upon: (1) an affidavit filed by a friend of the Petitioner that provided absolutely no support for the trial court's jurisdictional finding;[14] and (2) Thomas Leroy Clements's testimony before the Domestic Relations Commissioner:

Q: Now, have you been a resident at least 180 days, a resident of Kentucky at least 180 days prior to the filing of this petition? In other words—

A: Yes, sir.

Q: Okay. You were still a resident of the State of Kentucky when this petition was filed, is that right, even though you had lived in Florida for a few months?

A: Yes, that's right.

Q: Okay, have you ever established a residence?

A: Well, we never established a residence as far as driver's license or anything you know like cars.

Q: Voter registration?

**12.** While Kentucky adopted verbatim many provisions of the 1970 Uniform Marriage and Divorce Act, Kentucky made substantial changes to the provisions relating to particular-case jurisdiction. The Act proposed a finding by the court that "one of the parties, at the time the action was commenced, was *domiciled* in this State ... and that the *domicil* ... has been maintained for 90 days next preceding the *making of the findings*." UNIF. MARRIAGE AND DIVORCE ACT § 302(a)(1) (amended 1973), 9A U.L.A. 200 (1998) (emphasis added). Kentucky departed from this provision of the Act in two significant ways. First, in accordance with pre-existing Kentucky law, *see Lanham v. Lanham,* 300 Ky. 237, 188 S.W.2d 439 (1945), Kentucky opted

for a *residency* requirement instead of a *domicile* requirement. KRS 403.140(1)(a). Second, the General Assembly decided that residency must be maintained "for *180 days* [not 90 days] next preceding the *filing of the petition* [not the making of findings.]" *Id.*

**13.** Majority Opinion at 89 S.W.3d 403, 403–404 (2002).

**14.** The affiant expressed her opinion that Thomas Leroy Clements had not changed his *legal* residency to Florida, but admits that he "lived in Florida until the latter part of September, 1996, approximately 60 to 75 days" and did not reestablish *actual* residency in Kentucky until late September of 1996.

A: No, sir.

Q: You had bought a house?

A: Bought the house, paid for it.

In my opinion, none of Thomas Leroy Clements's answers to the questions posed to him constituted "any evidence to show" that he actually resided in Kentucky for the requisite period. In fact, his answers show exactly the opposite—i.e., that he "bought a house" and "lived in Florida for a few months" during the preceding six months. The first two questions established only that he had been a resident for at least 180 days "prior to the filing of this petition"—not necessarily the 180 days "next preceding" that filing—and that he was a resident of Kentucky "when the petition was filed."

Alternatively, the argument could be made that Thomas Leroy Clements's testimony constituted evidence that he had actually resided in Kentucky for the statutory time period. If that is the case, then, given not only the other evidence, but also the procedural posture of this case, I believe it is an inescapable conclusion that such testimony was untruthful and that any judgment entered on the basis of such testimony was void as fraudulently obtained. The Court of Appeals held that "the trial court did not have jurisdiction as [Thomas Leroy Clements] did not meet the 180–day next residency requirement," and, as Appellee did not file a cross-motion for discretionary review[15] from the opinion below, this holding is unchallenged and undisputed.[16] While, generally speaking, testimony can either be true or false, this testimony—to the extent that it directly addresses the jurisdictional question or created an inference relevant to the jurisdictional question—cannot have been truthful because the Court of Appeals has finally determined that Thomas Leroy Clements was, in fact, residing outside of Kentucky during a portion of the 180 days immediately preceding the filing of the petition. And, if the testimony cannot have been truthful, there is only one alternative remaining—it was false. As such, even if we stretch the testimony to make it germane to the specific-case jurisdiction inquiry, I do not see how we can avoid concluding that the decree of dissolution was obtained by fraud and is therefore void.[17] Because KRS 22A.020(3) does not preclude the appeal of a void judgment[18]— for the principal reason that "if there is no remedy by which judgments so procured . . . can be impeached *and annulled,*

**15.** CR 76.21.

**16.** *See Green River Health Department v. Wigginton,* Ky., 764 S.W.2d 475, 479 (1989), *overruled on other grounds by Withers v. University of Kentucky,* Ky., 939 S.W.2d 340 (1997).

**17.** *See McDaniel v. McDaniel,* Ky., 383 S.W.2d 344, 345 (1964) ("the rule is that a divorce judgment procured through fraud and perjury as to residence may by direct attack be set aside as void even though the party obtaining the divorce has remarried and innocent parties may be affected."); *Kirk v. Kirk,* 240 S.W.2d 598, 599 (1951) (" '[W]henever judgment is the result of a fraud perpetrated upon the court by a false representation of jurisdictional facts, the court rendering it may set it aside in a proper proceeding instituted for that purpose. For example, if a judgment is obtained upon constructive service by the plaintiff's false allegations that he resided in the court where the action was brought and that the defendant was a nonresident of the state, the judgment may be set aside on the ground that it was procured by fraud." ' (citing 31 AM. JUR. *Judgments* § 738)); *Logsdon v. Logsdon,* 204 Ky. 104, 263 S.W. 728 (1924).

**18.** *Self v. Self,* 293 Ky. 255, 168 S.W.2d 743, 744 (1943) ("It is only where a divorce judgment is void that an appeal may be prosecuted in this court . . . . If the fraud has been practiced to obtain apparent jurisdiction, the judgment can be set aside . . .; if the fraud related only to the testimony to obtain the divorce, the judgment cannot be so set aside.").

courts of justice may be made instruments by which the grossest frauds may be successfully accomplished, to the great wrong and injury of innocent persons" [19]—I would reverse the Court of Appeals and vacate that part of the decree dissolving the marriage.

JOHNSTONE, J., joins this dissent.

---

**19.** *Logsdon v. Logsdon, supra* note 17 at 732, *citing Edson v. Edson,* 108 Mass. 590 (1867).